# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NOVASPARKS SA,<br><br>    Plaintiff,<br><br>vs.<br><br>ENYXFPGA, INC. and ENYX SA,<br><br>    Defendants. | Civil Action No. 17-cv-7745<br><br>Honorable George B. Daniels, U.S.D.J.<br><br>Honorable Henry B. Pittman, U.S.M.J.<br><br>PUBLIC VERSION |

## MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND/OR STAY

FOLEY HOAG LLP

Peter A. Sullivan (PS4704)
*psullivan@foleyhoag.com*
Erik A. Huestis (EH2235)
*ehuestis@foleyhoag.com*
1540 Broadway, 23rd Floor
New York, NY 10036
Phone: (646) 927-5500
Fax: (646)927-5599


*Attorneys for Plaintiff NovaSparks SA*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 3

I.    There Is No Basis upon which to Dismiss this Action. ...................................... 3

II.   Enyx has not Supplied an Adequate Basis to Stay this Action. ......................... 5

    A.    The Authority to which Enyx Cites Does Not Establish a Basis to Grant a Stay. ..........................................................................................6

    B.    The Forum Selection Clause Does Not Apply to the Claims Raised in this Proceeding. ................................................................................7

        1.    The Forum Selection Clause Is Permissive. ...................................7

        2.    The Claims Are Not Subject to the Forum Selection Clause.....................9

    C.    The Convenience of the Parties Does Not Weigh in Favor of a Stay....................12

    D.    NovaSparks Suffers Severe Unfair Prejudice Each Day that the Patents and the Applications Remain in the Name of Enyx as Owner. ....................13

III.   References to Merger Discussions and Discovery Allegations only Serve to Confuse the Issues and Distract from the Issues that should be Addressed in this Motion. ........... 14

CONCLUSION................................................................................................ 16

B4846455.1

# TABLE OF AUTHORITIES

*Broker Genius, Inc. v. Zalta*,
280 F. Supp. 3d 495 (S.D.N.Y. 2017)................................................................... 15

*Cfirstclass Corp. v. Silverjet PLC*,
560 F. Supp. 2d 324 (S.D.N.Y. 2008)................................................................... 11

*Cheever v. Academy Chicago, Ltd.*,
685 F. Supp. 914 (S.D.N.Y. 1998) ...................................................................... 10

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)............................................................................................. 6

*Dodoni v. Fantis Foods, Inc.*,
2015 U.S. Dist. LEXIS 28971 (S.D.N.Y. Mar. 10, 2015) ................................. 9, 10

*Fabkom, Inc. v. R.W. Smith & Assocs., Inc.*,
1996 U.S. Dist. LEXIS 13686 (S.D.N.Y. Sept. 18, 1996)...................................... 15

*Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997) ............................... 12

*Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*,
2005 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 3, 2005).................................................. 4

*Halo Creative & Design v. Comptoir Des Indes Inc.*,
816 F.3d 1366 (Fed. Cir. 2016).................................................................... 3, 4, 10

*Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*,
342 F.2d 737 (2d Cir. 1965) ................................................................................. 15

*Integrated Cash Mgmt. Servs., Inc. v. Dig. Transactions*,
920 F.2d 171 (2d Cir. 1990)................................................................................. 15

*Japan Press Serv. v. Japan Press. Serv.*,
2013 U.S. Dist. LEXIS 2163 (E.D.N.Y. Jan. 2, 2013) ..................................... 9, 10

*John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs.*,
22 F.3d 51 (2nd Cir. 1994)..................................................................................... 8

*Jose Armando Bermudez & Co. v. Bermudez Int'l*,
2000 U.S. Dist. LEXIS 12354 (S.D.N.Y. Aug. 29, 2000).................................. 4, 5

*MasterCard Int'l, Inc. v. Argencard Sociedad Anonima*,
2002 U.S. Dist. LEXIS 4625 (S.D.N.Y. 2002)................................................ 12, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
460 U.S. 1 (1983).................................................................................................. 6

*Motown Record Co. v. iMesh.com*,
2004 U.S. Dist. LEXIS 3972 (Mar. 12, 2004) ........................................................ 5

*Negrin v. Kalina*,
2010 U.S. Dist. LEXIS 71068 (S.D.N.Y. July 14, 2010) ........................................ 7

ii

*Ole Media Mgm't, L.P., v. EMI April Music, Inc.*,
    2013 U.S. Dist. LEXIS 82073, (S.D.N.Y. Jun. 11, 2013) ...................................................... 6

*Phillips v. Audio Active, Ltd.*,
    494 F.3d 378 (2d. Cir. 2007).............................................................................................. 7, 9

*Photothera, Inc. v. Oron*,
    2009 U.S. Dist. LEXIS 22709 (S.D. Cal. Mar. 19, 2009) ................................................. 4, 12

*Piper Aircraft v. Reyno*,
    454 U.S. 235 (1981)............................................................................................................ 3

*Renaissance Nutrition, Inc. v. Burkard*,
    2013 U.S. Dist. LEXIS 61996 (W.D.N.Y. Apr. 11, 2013) ...................................................... 8

*Rosehoff Ltd. v. Cataclean Arms. LLC*,
    2013 U.S. Dist. LEXIS 76251 (W.D.N.Y. May 13, 2013) ...................................................... 8

*Royal and Sun Alliance Ins. Co. v. Century Int's Arms, Inc.*,
    466 F.3d 88 (2d Cir. 2006).................................................................................................. 6

*Schenker A.G. v. Societe Air Fr.*,
    2016 U.S. Dist. LEXIS 50422 (E.D.N.Y. Apr. 13, 2016) ...................................................... 7

*Tapco Underwriters, Inc. v. Catalina London, LTD.*,
    2014 U.S. Dist. LEXIS 174867 (S.D.N.Y. Dec. 5, 2014) ...................................................... 11

*The Name LLC v. Ortiz*,
    2010 U.S. Dist. LEXIS 121413 (S.D.N.Y. Nov. 16, 2010) ...................................................... 5

*Vanity Fair Mills v. T. Eaton Co.*,
    234 F.2d 633, (2d Cir. 1956)............................................................................................... 5

# INTRODUCTION

Defendant Enyx committed a variety of offenses against Plaintiff NovaSparks in connection with the use and misappropriation of NovaSparks confidential information by Enyx employees, who appropriated NovaSparks company property for themselves when they left NovaSparks to form Enyx in early 2011. Some of this misappropriation took the form of Enyx's claims of ownership and inventorship of U.S. Patents on inventions conceived at NovaSparks and with other NovaSparks employees; some of the misappropriation took the form of Enyx selling competing products to U.S. NovaSparks customers (among others) using NovaSparks trade secrets.

NovaSparks previously brought claims against Enyx for certain misdeeds when the Enyx employees left NovaSparks, and the companies entered into an agreement (the "Settlement Agreement") that required Enyx to ███████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

Enyx breached certain of these obligations, and a court in Paris is currently considering the breach of contract claims regarding the Settlement Agreement pursuant to a forum selection clause.

The issues presented in this case, however, do not flow from the provisions in the Settlement Agreement, but rather stem from other conduct taking place both before the consummation of the Settlement Agreement and afterward. In this case, this Court is asked to determine the following issues: a) is NovaSparks employee Marc Battyani a co-inventor of the U.S. patents and applications filed in the name of Enyx; b) should these U.S. patents be assigned

to NovaSparks because the technology was created at NovaSparks and is thus the intellectual property of the company; and c) is the use of the NovaSparks technology in products offered and sold by Enyx to users in the U.S. a misappropriation of trade secrets under state and federal law. These issues will require an analysis of the work performed at NovaSparks up to early 2011, when the Enyx employees left. It will require an understanding of the use of the technology in products sold by Enyx in the U.S. It will also require an understanding of the employment agreements and obligations present for these employees, some of which will require resort to French law.

None of these issues turns on the terms of the Settlement Agreement, or requires resolution of the claims pending in the Paris court as a predicate to making a determination here. The Settlement Agreement does not, on its face, purport to grant to Enyx any intellectual property rights of NovaSparks. Any use of NovaSparks intellectual property that would have been unlawful before the Settlement Agreement continues to be unlawful now. To the extent that there is overlap of issues because the same cast of characters both breached the settlement agreement and also committed the offenses raised in this case, the overlap is minor compared to the scope of the claims that would remain unresolved after waiting years for the French proceeding to run its course.

The prejudice to NovaSparks is undeniable. It sells feed handling solutions in the U.S. that arguably are covered by the U.S. patents that Enyx has applied for and received. NovaSparks must somehow explain to any potential customer seeking assurance regarding NovaSparks' freedom to operate that these Enyx patents will not hinder NovaSparks from providing continuous, reliable service. The businesses to which NovaSparks sells these solutions require data transfer rates that are at the highest speeds achievable. These clients require the

2

highest speeds, but they also need to know that NovaSparks' service will not be interrupted by a patent infringement dispute.

The motion to dismiss or stay should be denied, for the reasons that follow.

## ARGUMENT

## I.     THERE IS NO BASIS UPON WHICH TO DISMISS THIS ACTION.

This action should not be dismissed because Enyx provides no support for dismissing this case under any abstention doctrine.  Enyx has styled its motion as one to "dismiss and/or stay based on a mandatory forum selection clause."  In its argument point headings, however, it does not address why this case should be dismissed.  (*See* Table of Contents, Point Heading III.)  Instead, buried within section III.B. Enyx refers to dismissal, making the claim that the doctrine of *forum non conveniens* would support such a decision.

To the extent Enyx is attempting to have this action dismissed on the basis of *forum non conveniens*, there is no basis for such an action.  *Forum non conveniens* is only available when there exists another forum that is both available and adequate to hear the case.  *See Piper Aircraft v. Reyno*, 454 U.S. 235, 254 n. 22 (1981).  An alternative forum is not adequate where it "does not permit litigation of the subject matter of the dispute."  *Id.*

A French court is not adequate to hear this case because it does not have the power to determine questions of U.S patent law, such as inventorship of a U.S. patent.  The Federal Circuit in *Halo Creative & Design v. Comptoir Des Indes Inc.*, held as much in connection with a motion to have a claim of U.S. patent and copyright infringement claims heard by a foreign court.  816 F.3d 1366 (Fed. Cir. 2016).  In denying the motion to dismiss, the court stated that "[i]t is particularly important that a *forum non conveniens* movant demonstrate the adequacy of an alternative forum when the dispute implicates the enforcement of intellectual property rights.

3

The policies underlying United States copyright, patent, and trademark laws would be defeated if a domestic forum to adjudicate the rights they convey was denied without a sufficient showing of the adequacy of the alternative foreign jurisdiction." *Id.* at 1373.

The Federal Circuit noted that courts routinely deny motions to dismiss on *forum non conveniens* grounds because U.S. intellectual property law forms "the crux" of the dispute. *See id.* (citing as examples *Photothera, Inc. v. Oron*, 2009 U.S. Dist. LEXIS 22709 (S.D. Cal. Mar. 19, 2009); *Greenlight Capital, Inc. v. GreenLight (Switzerland) S.A.*, 2005 U.S. Dist. LEXIS 2 (S.D.N.Y. Jan. 3, 2005); *Jose Armando Bermudez & Co. v. Bermudez Int'l*, 2000 U.S. Dist. LEXIS 12354 (S.D.N.Y. Aug. 29, 2000)).

In *Photothera, Inc. v. Oron*, the court denied the motion based on *forum non conveniens* in a case seeking declaratory relief concerning the parties' rights and interests regarding a patent assignment, and a determination of non-infringement of certain patents contained in the license. The court noted that the adequacy of the forum is a threshold issue to decide before balancing the relevant private and public interest facts. 2009 U.S. Dist. LEXIS 22709, at *10-11. The court denied the motion for dismissal, finding that the foreign court did not provide an adequate forum "because Plaintiff's claims could not be resolved fully there and an Israeli decision regarding U.S. patent rights would be unenforceable in this country." *Id*. at *11.

In *Greenlight Capital, Inc. v. GreenLight*, the court denied a motion based on *forum non conveniens* in a case concerning U.S. trademark rights, in favor of a parallel proceeding concerning Swiss trademark rights over corresponding trademarks. It noted with respect to trademarks that the Second Circuit had previously noted: "when trade-mark rights within the United States are being litigated in an American court, the decisions of foreign courts concerning the respective trade-mark rights of the parties are irrelevant and inadmissible." 2005 U.S. Dist.

LEXIS 2, at *19 (citing *Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)). It held that the pending Swiss litigation would not "decisively resolve" the U.S. trademark claims and denied the motion. 2005 U.S. Dist. LEXIS 2, at *19-20; *see also The Name LLC v. Ortiz*, 2010 U.S. Dist. LEXIS 121413, *17-*19 (S.D.N.Y. Nov. 16, 2010) (denying dismissal of trademark infringement claim on basis of *forum non conveniens*).

In *Jose Armando Bermudez & Co. v. Bermudez Int'l*, the court rejected defendant's bid to dismiss a copyright action in favor of a parallel proceeding taking place in the Dominican Republic. The court noted that "the Dominican courts are unlikely to be able to grant an adequate remedy to plaintiff, because plaintiff's claims are primarily governed by U.S. trademark and copyright law and are based on infringing acts in the United States." 2000 U.S. Dist. LEXIS 12354, at *11-12; *see also Motown Record Co. v. iMesh.com*, 2004 U.S. Dist. LEXIS 3972 *19-*20 (Mar. 12, 2004) (denying motion to dismiss copyright claims on basis of *forum non conveniens* because there was no showing that an Israeli court was an adequate forum to litigate U.S. copyright claims).

This case should not be dismissed on the basis of *forum non conveniens* because the Paris court is not an adequate forum in which to litigate the patent claims raised in this action.

## II.    ENYX HAS NOT SUPPLIED AN ADEQUATE BASIS TO STAY THIS ACTION.

The court should not stay this action. As discussed in the prior section, the French court is not an adequate forum to litigate the U.S. claims. Courts will not grant stays in situations such as this, where there will be issues left to litigate regardless of the resolution of the foreign court, and where there would be prejudice to the non-moving party from the delay.

### A. The Authority to which Enyx Cites Does Not Establish a Basis to Grant a Stay.

The cases that Enyx cite do not support the grant of a stay. The *Royal and Sun Alliance* case is not a case involving a motion to stay at all (*see* Enyx Mem. at 19), but rather a case determining whether to abstain from exercising jurisdiction in the face of a parallel proceeding. *See Royal and Sun Alliance Ins. Co. v. Century Int's Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006). In that case, the court rejected a motion to abstain, noting that there is a "virtually unflagging obligation . . . to exercise the jurisdiction given [it]." *Id.* at 91 (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). In discussing the factors cited by the court (and used here by Enyx), the court noted that "[t]he Supreme Court has recognized that a decision to abstain from exercising jurisdiction based on the existence of parallel litigation 'does not rest on a mechanical checklist, but on a careful balancing of the important factors ... as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" 466 F.3d at 94 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 16 (1983)). The *Royal and Sun Alliance* court found that there were no exceptional circumstances to prevent the exercise of jurisdiction in that case.[1] *See* 466 F.3d at 94.

Moreover, the decision in *Ole Media Mgm't, L.P., v. EMI April Music, Inc.*, 2013 U.S. Dist. LEXIS 82073, (S.D.N.Y. Jun. 11, 2013), which also was cited by Enyx, does not counsel a different result. In that case, which involved separate lawsuits alleging breach of contract that were venued in Canada and in New York federal court, neither party disputed whether the

---

1. The court instructed the district court to make a determination on whether a stay would be appropriate, but did not make such a determination one way or the other itself. *See id.* at 96.

6

Canadian court would provide an adequate forum to decide all the issues presented in the New York case. 2013 U.S. Dist. LEXIS 82073, at *14. That is not true here.

To the contrary, other cases decided in this circuit that address motions to stay do not support a stay here. For example, in *Schenker A.G. v. Societe Air Fr.*, 2016 U.S. Dist. LEXIS 50422 (E.D.N.Y. Apr. 13, 2016), the court denied a motion to stay where the issues in the two cases were "not entirely overlapping" and the conduct at issue in the case was "closely tied to the United States." *Id.* at *8-*9. Similarly, in *Negrin v. Kalina*, 2010 U.S. Dist. LEXIS 71068 (S.D.N.Y. July 14, 2010), the court denied staying the case because the foreign proceeding would not be an "efficient vehicle for fairly resolving all the right of parties." It found that the issues raised in the two actions were "dissimilar." *Id.* at *31. In this case, conduct involving the filing of U.S. patent applications and in selling feed handling solutions took place in the United States. In addition, issues specific to inventorship, ownership and misappropriation will predominate over potentially overlapping factual issues.

**B.     The Forum Selection Clause Does Not Apply to the Claims Raised in this Proceeding.**

In determining whether to dismiss an action based on a forum selection clause, courts first undertake three inquiries: 1) whether the clause was reasonably communicated; 2) whether the clause is mandatory or permissive; and 3) whether the claims are subject to the forum selection clause. *Phillips v. Audio Active, Ltd.*, 494 F.3d 378, 394 (2d. Cir. 2007). The forum selection clause does not apply to this case because it is permissive rather than mandatory, and the claims at issue in this action are clearly outside the clause's scope.

**1.     The Forum Selection Clause Is Permissive.**

The clause at issue states that ███████████████████████████████████████

███████████████████████████████████████████████████████████████████

7

███████████████ When faced with similar clauses, however, courts have found that forum selection clauses that do not conclusively state that jurisdiction is to be exclusive are to be treated as permissive, rather than mandatory.

In *John Boutari & Son, Wines & Spirits, S.A. v. Attiki Importers & Distribs.*, 22 F.3d 51 (2d Cir. 1994), the Second Circuit dealt with a similar clause, which read "any dispute arising between the parties hereunder shall come within the jurisdiction of the competent Greek Courts, specifically of the Thessaloniki Courts." The court found that this language only specified that the parties were submitting to the jurisdiction of that court, without explicitly defining that jurisdiction as "exclusive." *Id.* at 52-53. "[W]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive." *Id.* at 52.

Further cases have made clear that courts in particular look for language such as "shall" or "exclusive jurisdiction" to signal that the parties intended to submit only to the jurisdiction of that court alone. For instance, the court in *Rosehoff Ltd. v. Cataclean Arms. LLC*, 2013 U.S. Dist. LEXIS 76251, *23-*24 (W.D.N.Y. May 13, 2013), held that a clause stating that the parties "agree to submit to the exclusive jurisdiction of the courts of England and Wales" was mandatory specifically because "the use of the phrase 'exclusive jurisdiction'" distinguished the case from others. *See also Renaissance Nutrition, Inc. v. Burkard*, 2013 U.S. Dist. LEXIS 61996, *16-*17 (W.D.N.Y. Apr. 11, 2013) (emphasizing that the phrase "shall be determined" made the clause mandatory). The clause at issue here contains no such language. Rather, the fair reading of the clause is that ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████

8

2.    <u>The Claims Are Not Subject to the Forum Selection Clause.</u>

Aside from it not being mandatory, the forum selection clause in the Settlement Agreement does not reach the claims that are pending here.  It states, █████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████ (Enyx Mem. Ex. 1, Art. 8)  Questions of patent inventorship, patent ownership, or new misappropriations of NovaSparks confidential information are not related to ██████████████████████████████████ Each of these claims is based on tortious conduct taking place in the U.S.

In similar intellectual property contexts, the Second Circuit has held that claims that essentially relate to the authorship or ownership of the intellectual property at issue do not come within the scope of forum selection clauses, even when the contracts containing those clauses are much closer to the dispute than the Settlement Agreement is here.  For instance, in *Phillips*, the court dealt with a forum selection clause in a recording contract in which the plaintiff had allegedly assigned his copyright in several songs to the defendant.  The court found that plaintiff's claim of copyright infringement was not subject to the forum selection clause because he "does not rely on the recording contract to establish his ownership of the relevant copyrights, but on his authorship of the work."  *Phillips,* 494 F.3d at 390.  The courts in this district have held consistently that forum selection clauses in adjacent agreements do not capture intellectual property ownership claims because the source of the rights at issue does not originate in those contracts.  *See, e.g., Dodoni v. Fantis Foods, Inc.*, 2015 U.S. Dist. LEXIS 28971, *14-*15 (S.D.N.Y. Mar. 10, 2015) (finding that plaintiff's claim of trademark ownership "does not originate in the contract" but rather arises "by virtue of the control of the quality of the product in connection with which the mark is used in commerce"); *Japan Press Serv. v. Japan Press. Serv.*,

2013 U.S. Dist. LEXIS 2163, *33-*35 (E.D.N.Y. Jan. 2, 2013) (same); *Cheever v. Academy Chicago, Ltd.*, 685 F. Supp. 914, 917 (S.D.N.Y. 1998) (holding that a forum selection clause in a publishing agreement in which copyrights were allegedly conveyed did not prevent plaintiff from bringing an infringement claim outside that forum). The licensing agreements at issue in these cases were much more relevant to the actual claims in the cases than the settlement dispute here. In *Dodoni*, *Japan Press* and *Cheever*, defendants had the license agreements available as a defense to the ownership claims, and the courts still found that the claims were outside the scope of the forum selection clauses. Here, the Settlement Agreement is entirely unrelated to a dispute regarding the inventorship of the patent. The gravamen of the inventorship dispute is that Enyx filed a U.S. patent application in the United States claiming to be a sole inventor of an invention that was possessed by NovaSparks at the time the Enyx employees left in 2011 and invented through the efforts of a NovaSparks employee. Whether an inventor was omitted and the patent is in need of correction under U.S patent law is separate and apart from whether Enyx also violated a contractual provision in the Settlement Agreement by ███████████ Even if there were no contractual prohibition to speak of, it would have been improper under the patent laws to omit an inventor in applying for a patent. *See Halo Creative & Design*, 816 F.3d at 1373.

As with the prior claim, ownership of the U.S. patent is not covered under the Settlement Agreement. There is no provision, for example, for the application of joint intellectual property. The only issue is whether Mr. Kodde *et al.* were obliged under their agreements with NovaSparks, or as a question of French law, to assign their patent rights to the company. While this question may involve French law, it is not an issue of the ███████████ ███████████

10

Finally, with respect to the trade secret misappropriation, there is no question that there are a few common issues of fact relating to Enyx's activities before and after the Settlement Agreement as it pertains to the theft of NovaSpark's trade secret claims. Nevertheless, this action also encompassed actions taken by Enyx that are independent of the obligations in the Settlement Agreement. NovaSparks alleges that Enyx, after negotiating the Settlement Agreement, improperly used NovaSparks' information to obtain patents in 2013, and created products that they sold to customers in the U.S. in 2013 and later. These improper actions took place after the Settlement Agreement and thus could not be the subject of a release contained in the Settlement Agreement.[2]

Further, tort claims such as a misappropriation of trade secrets are only encompassed by a contractual forum selection clause "if the tort claims ultimately depend on the existence of a contractual relationship between the parties, or if the resolution of the claims relates to the interpretation of the contract, or if resolution of the claims relates to the interpretation of the contract, or if the tort claims involve the same operative facts as a parallel claim." *Cfirstclass Corp. v. Silverjet PLC*, 560 F. Supp. 2d 324, 330 (S.D.N.Y. 2008); *see Tapco Underwriters, Inc. v. Catalina London, LTD.*, 2014 U.S. Dist. LEXIS 174867, *11-*12 (S.D.N.Y. Dec. 5, 2014) ("disputes that are in no way affected by the existence of an agreement cannot be said to 'relate to' that agreement"). The trade secret claims in this case do not require interpretation of the

---

2.      The release in the Settlement Agreement is much narrower than Enyx has portrayed it. The Settlement Agreement states, ███████████████████████████████

(*See* Enyx Memorandum at 7.)

11

Settlement Agreement. Any overlap of factual issues is outweighed by the additional factual issues regarding the U.S. patents that necessarily will be decided in this court. *See MasterCard Int'l, Inc. v. Argencard Sociedad Anonima*, 2002 U.S. Dist. LEXIS 4625, *28 (S.D.N.Y. 2002) (noting that "although there is some overlap between the two litigations, that overlap arises from the business decisions of the parties to include a New York forum selection clause in the By-laws but not in the License Agreement" and holding that "[t]he two litigations can proceed at the same time").

**C.      The Convenience of the Parties Does Not Weigh in Favor of a Stay.**

Enyx refers to the convenience of the French proceedings with respect to "duplicative discovery and briefing." (*See* Enyx Mem. at 22.) But there is little chance of duplicative discovery in France and the U.S. because France does not allow for depositions and U.S. style discovery. No matter what happens in France, there will need to be discovery conducted and depositions taken to fully investigate the claims in this case. As discussed above, there are issues of U.S. patent inventorship that must be decided by a U.S. court; nothing that takes place in the French court will alter this obligation. *See Photothera*, 2009 U.S. Dist. LEXIS 22709, at *11 (noting foreign tribunal "decision regarding U.S. patent rights would be unenforceable in this country").

Moreover, the Settlement Agreement could not cover whether the claim of inventorship is "barred." (*See* Enyx Mem. at 22.) Inventorship does not arise out of the commercial transactions of the parties. It is to be determined as a question of federal law based on whether an individual has provided a substantial inventive contribution to the conception of the claimed invention. *See, e.g., Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997) ("The case law thus indicates that to be a joint inventor, an individual must make a contribution to the

12

conception of the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention.")  There is no language in the Settlement Agreement that would allow a French court to bar a U.S. proceeding to determine inventorship, and a court would rightly not follow such a determination.  That is just fanciful.[3]

Even as to the other claims, there is nothing to stop this court from making an independent determination that claims made in this case fall outside the scope of the forum selection clause.  This court has the power to decide its own jurisdiction with respect to the Settlement Agreement.  *See, e.g., MasterCard Int'l,*  2002 U.S. Dist. LEXIS 4625, *24 (noting court's inherent power to determine whether to dismiss or stay an action based on pendency of a related case in a foreign jurisdiction).

### D.  NovaSparks Suffers Severe Unfair Prejudice Each Day that the Patents and the Applications Remain in the Name of Enyx as Owner.

There is substantial prejudice to having patents to your intellectual property in the name of your major competitor.  Customers of NovaSparks may question the freedom to operate a NovaSparks product in the face of these patents, which appear to cover the latest solutions offered by NovaSparks.  This is an untenable position to be in.[4]

---

3.    Enyx also references the French proceeding, which was filed four days before this action, as a basis to stay the case.  This factor, to the extent it is even considered, is a neutral one.  The French case has not advanced relative to the U.S. action.  *See, e.g., MasterCard Int'l*, 2002 U.S. Dist. LEXIS 4625, at *26-*27.

4.    Enyx also attacks some of NovaSparks claims on the merits in this memorandum.  With respect to the DTSA, Enyx focuses only on the application and publication of the patent application, claiming that all of that conduct occurred prior to the enactment date of the DTSA.  (*See* Enyx Mem. at 23-24.)  Enyx also engaged in acts of misappropriation after that date, including selling in the U.S. products that contain NovaSparks trade secrets.  (*See* Complaint at ¶ 29-30 (Docket No. 1)).

13

Enyx provides no timetable or guarantees that the duration of such a stay would be limited.  These cases started at almost the same time, and it would not be surprising for the Paris Court proceeding to take several years through appeals.  Moreover, there is no question that issues involving U.S. patent law will remain to be resolved in this court regardless of the determinations of the French court.

III.     **REFERENCES TO MERGER DISCUSSIONS AND DISCOVERY ALLEGATIONS ONLY SERVE TO CONFUSE THE ISSUES AND DISTRACT FROM THE ISSUES THAT SHOULD BE ADDRESSED IN THIS MOTION.**

In various places in it memorandum, Enyx cites to failed negotiations to merge the two companies, and complains about discovery responses.  (*See* Enyx Mem at 8, 11.)  These issues have no bearing on whether there should be a stay in this proceeding.

If anything, these complaints, and particularly those about the specificity of NovaSparks trade secret designation, have been part of a plot to forestall Enyx's discovery obligations in this action.  Enyx attempted to create an additional discovery burden at the outset by seeking a modification to the scheduling order.  Then, in response to NovaSparks' answers to interrogatories, Enyx complained that the response was not specific enough.  It turns out that Enyx's attorneys apparently made this determination without even showing the interrogatory responses (in redacted form) to its clients.  Presumably, these former employees of NovaSparks would be in a better position to understand the technical aspects of the description than the attorneys would.

Enyx then presents in arguments here a distorted view of the trade secret designation, dismissing the twelve pages of further illustration that describes the three items listed.  *Compare* Motion at 12 (listing three items) *with* Ex. 3 (twelve pages of description linking specific code segments to specific elements of the patent claims following the list).  With respect to this

14

linking of code segments to the patent claim element, Enyx complains in a footnote about having to review "hundreds of pages" of code (*see* Enyx Mem. at 13 n.7), ignoring the fact that NovaSparks specifically links specific sections of code to elements in the patent claims.  Enyx's counsel has engaged in a fit of willful blindness to forestall its obligations to produce documents that have been requested months ago.  There is a Goldilocks aspect to Enyx's arguments, complaining that cogent descriptions of trade secrets are "too little" and illustrations to provide further context to these descriptions are "too much."

To be clear, there is no particular level of specificity prescribed in New York law for a trade secret description.  *See Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 514-15 (S.D.N.Y. 2017) (noting "neither the New York Court of Appeals nor the United States Court of Appeals for the Second Circuit has expressly required trade secrets be identified with any particular degree of specificity," and requiring only that trade secrets not be "vague and indefinite," and thereby allow the defendant to defend himself).  The level of specificity provided here satisfies the obligation to allow the defendant to understand the claim and defend itself.

Moreover, items such as software architecture as identified here are considered trade secrets.  *See Integrated Cash Mgmt. Servs., Inc. v. Dig. Transactions*, 920 F.2d 171, 173-74 (2d Cir. 1990) (holding that the manner of arrangement and interaction of non-secret utility programs was itself a trade secret, stating "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." (quoting *Imperial Chem. Indus. Ltd. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)); *see also Fabkom, Inc. v. R.W. Smith & Assocs., Inc.*, 1996 U.S. Dist. LEXIS

15

13686, *6 (S.D.N.Y. Sept. 18, 1996) ("The source code, format, structure, and organization of the software is certainly not known outside the business.").

In any event, these issues have no bearing on the issue of a stay. If Enyx wishes to defend itself and argue the merits, then the parties should continue down that road and move expeditiously through discovery and to trial.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss or stay this proceeding should be denied.

Dated: June 13, 2018

On behalf of Plaintiff NovaSparks SA

Peter A. Sullivan (PS4704)
*psullivan@foleyhoag.com*

Erik A. Huestis (EH2235)
*ehuestis@foleyhoag.com*
**Foley Hoag LLP**
1540 Broadway, 23rd Floor
New York, NY 10036
Phone: (646) 927-5500
Fax: (646) 927-5599

*Attorneys for Plaintiff NovaSparks SA*

16

## Certificate of Service

I, Erik Huestis, certify that on June 13, 2018, I caused a copy of the foregoing document to be served on defendants by sending a copy of the same by email to their counsel of record as follows:

Kenneth J. Sheehan
ksheehan@bakerlaw.com
Michael Anderson
meanderson@bakerlaw.com
Baker & Hostetler LLP
1050 Connecticut Ave, NW
Washington, DC 20036

Erik Huestis