USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 2 0 2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x

NOVASPARKS SA, :

Plaintiff, :

-against- :

:

ENYXFPGA and ENYX SA, :

Defendants. :

---------------------------------------- x

MEMORANDUM DECISION AND ORDER

17 Civ. 7745 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff NovaSparks SA ("NovaSparks") brings this action against Defendants EnyxFPGA, Inc. ("EnyxFPGA") and Enyx SA ("Enyx") alleging that Defendants used confidential information they misappropriated from Plaintiff to develop a technology that is the subject of patent applications filed in the United States (the "U.S. Patent Applications") and Europe (the "European Patent Applications"). (*See* Compl., ECF No. 1.) Plaintiff seeks declaratory judgments that Plaintiff's Chief Technology Officer, Marc Battyani, is a joint inventor of the inventions described in the U.S. Patent Applications and that Plaintiff is the owner of the inventions. (*Id.* ¶¶ 33, 39.) Plaintiff also asserts claims for the misappropriation of its trade secrets under both state and federal law. (*Id.* ¶¶ 43–66.) Defendants move to dismiss Plaintiff's patent ownership and trade secret misappropriation claims and to stay Plaintiff's patent inventorship claim pending the outcome of a related action filed by Plaintiff against Enyx in France (the "France Action").[1] (ECF No. 29.)

---

[1] Defendants' Notice of Motion states that they are seeking to "dismiss and/or stay this matter." (ECF No. 29.) However, Defendants clarify in their reply brief that they seek to "dismiss Plaintiff's trade secret and [patent] ownership claims, and stay the remaining claims pending resolution of the . . . French litigation." (Reply Mem. in Supp. of Mot. to Dismiss and/or Stay ("Reply"), at 10.)

Defendants' motion is GRANTED as to the dismissal of Plaintiff's patent ownership and trade secret misappropriation claims, but DENIED as to the stay of Plaintiff's patent inventorship claim.

## I. FACTUAL BACKGROUND

Plaintiff is a French corporation involved in the design and marketing of financial data processing systems. (Compl. ¶¶ 4, 11.) Plaintiff has designed and developed a "feed-handling" system that processes financial data streams, such as stock exchange orders. (*Id.* ¶ 13.) The system includes software and an electronic board that uses Field-Programmable Gate Array ("FPGA") integrated circuits, which are designed to treat financial data with the "lowest latency possible." (*Id.*) The system also processes real-time market data functions in hardware, and provides processing that is faster than what is available with traditional software-based solutions. (*Id.* ¶ 14.) Plaintiff has been marketing its system to stock exchanges, banks, and other financial institutions since 2010. (*Id.* ¶ 15.)

In 2009, Edward Kodde began working as an intern for Plaintiff, which was then known as HPC Platform SA ("HPC Platform"). (*Id.* ¶ 4.) During his time as an intern and, later, as an employee, Kodde worked on the source code for Plaintiff's HPC Platform at Battyani's direction. (*Id.* ¶ 19.)

In connection with his work as an intern, Kodde signed an HPC Platform Non-Disclosure and IP Assignment Agreement (the "Intern Agreement"), which assigns to Plaintiff:

> all intellectual property rights and know-how in and to any creation or invention developed by [Kodde] in relation to [his] internship and in particular to the Project in any form whatsoever (including in particular, technical inventions, software, computer programs,

> integrated circuits, designs, plans or any other technical, commercial or other documents).[2]

(Intern Agmt. § 3.1,[3] *see also* Compl. ¶ 58.) The Intern Agreement further states that such rights "shall become [NovaSparks'] property as soon as each creation or invention is developed." (Intern Agmt. § 3.1.)

The Intern Agreement also contains a confidentiality clause, which obligated Kodde to, among other things, "keep HPC Platform's Confidential Information secret and confidential and not disclose it in any way to any third party" and to "not use the Confidential Information in any way which is detrimental to the Project or HPC Platform."[4] (*Id.* §§ 2.1.1, 2.1.3.) The Intern Agreement provided that Kodde's confidentiality obligations "remain[ed] effective until the end of the internship and for three (3) years thereafter." (*Id.* § 2.3.) Additionally, the Intern Agreement contains a choice-of-law and forum selection clause, which provides, "[t]his Agreement shall be

---

[2] The term "Project" is defined in the agreement as "the projects that HPC Platform may want to implement." (Decl. of Kenneth J. Sheehan dated July 23, 2018, Ex. 6 ("Intern Agmt."), ECF No. 42-1, at 1.)

[3] Defendants do not indicate what Federal Civil Rule of Procedure that their motion is pursuant to. However, the Second Circuit "ha[s] affirmed judgments that enforced forum selection clauses by dismissing cases under . . . Rule 12(b)(1), . . . Rule 12(b)(3), and . . . Rule 12(b)(6)." *Id.* (internal citations omitted). Because all three types of motions permit this Court to consider materials outside of the complaint, this Court considers the Intern Agreement, the Employee NDA, and the Settlement Agreement discussed *infra*, in deciding the instant motion. *See Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 89 (2d Cir. 2009) (noting "pleadings and affidavits" may be considered on a Rule 12(b)(3) motion); *Cohen v. Rosicki & Assocs., P.C.*, 897 F.3d 75, 80 (2d Cir. 2018) (considering "materials incorporated in [the complaint] by reference, and documents that . . . are integral to the complaint" on Rule 12(b)(6) motion); *Cortlandt St. Recovery Corp. v. Hellas Telecommc'ns, S.a.r.l.*, 790 F.3d 411, 417 (2d Cir. 2015) ("In deciding a Rule 12(b)(1) motion, the court may also rely on evidence outside the complaint.") (citation omitted).

[4] The Intern Agreement defines the term "Confidential Information" to include, without limitation, "all information or documents of any kind whatsoever, whether oral, written, or in any other form (fax, emails, reports, plans, documents, drawings, formulas, memorandum, writing, samples and knowledge), transmitted by HPC Platform in connection with the Project" and "any information or analyses derived from, containing or reflecting such information." (Intern Agmt. § 1.1.)

governed by and construed in accordance with the laws of France and the parties submit to the exclusive jurisdiction of the French courts." (*Id.* § 4.2.)

On October 27, 2009, Kodde signed an HPC Platform Non-Disclosure Agreement in connection with his employment contract with Plaintiff (the "Employee NDA"). The Employee NDA contained a confidentiality clause imposing obligations identical to those in the Intern Agreement, and stated that such obligations "expire[d] 24 months after the termination of the contract of employment." (Decl. of Michael E. Anderson dated May 23, 2018 ("Anderson Decl."), Ex. 2 ("Employee NDA") §§ 2.1.1, 2.1.3, 3.3; *see also* Compl. ¶ 58.[5]) The Employee NDA also contained choice of law and forum selection provisions identical to the ones in the Intern Agreement. (Employee NDA § 3.2.)

In 2011, Kodde left NovaSparks and, together with several other former employees, formed Enyx. (Compl. ¶ 20.) Enyx's bylaws indicate that its purpose is the "design, manufacture, marketing, and maintenance or evolution of technical and software solutions, low-latency data processing and hardware . . . applied to financial data flows and the provision of . . . related services or products." (*Id.*) Plaintiff alleges that, "in violation of his confidentiality obligations to NovaSparks, and knowing that they were the property of NovaSparks, Mr. Kodde disclosed NovaSparks' trade secrets to Enyx." (*Id.* ¶ 47; *see also id.* ¶ 59.) Plaintiff further alleges that Enyx knew or should have known that the information Kodde disclosed was obtained in violation of Kodde's confidentiality obligations. (*Id.* ¶ 48.)

---

[5] This exhibit, and all other exhibits (except the Intern Agreement) as well as Defendants' memorandum of law and reply memorandum in support of their motion, and the unredacted version of Plaintiff's memorandum of law in opposition, have been filed under seal pursuant to this Court's Orders. (*See* Order dated May 23, 2018, ECF No. 28; Order dated June 19, 2018, ECF No. 36 (reply); Order dated June 19, 2018, ECF No. 37 (opposition).)

On September 13, 2011, after Plaintiff became aware of the existence of Enyx, Plaintiff wrote a letter to Enyx reminding Plaintiff's former employees of their confidentiality obligations and asking Enyx to respect Plaintiff's intellectual property rights. (*Id.* ¶ 21.) Although Enyx denied infringing on Plaintiff's rights, Plaintiff subsequently discovered that Defendants were marketing a feed-handling solution and that the parties were in competing discussions with North American customers. (*Id.*)

On December 13, 2012, with the permission of the President of the Paris Tribunal de Grande Instance, Plaintiff carried out an "infringement seizure" on Enyx SA's premises.[6] (*Id.* ¶ 22.) Plaintiff alleges that, during the seizure, it discovered that Enyx "used various materials wrongfully expropriated from NovaSparks in the development of Enyx's feed handling product," but does not identify or describe those materials. (*Id.* ¶ 23.)

On January 9, 2013, Plaintiff and Enyx entered into a Settlement Agreement regarding Plaintiff's claims that Enyx had misappropriated Plaintiff's materials. (*Id.* ¶ 24.) The Settlement Agreement states, among other things, that "[a]s consideration for the commitments made by Enyx in article 1.1," which required Enyx to make settlement payments, "NovaSparks waives the right to any legal action against Enyx . . . that may be based on the facts or material found or the documents seized during the infringement seizure." (Settlement Agmt. art. 1 § 1.2.) The Settlement Agreement also states that "[i]n the future, Enyx undertakes not to file patent applications for a technology that was owned by NovaSparks (that it developed itself or was

[6] The Settlement Agreement between the parties indicates that the infringement seizure was "in application of article L. 332-4 of the Intellectual Property Code." (Anderson Decl., Ex. 1 ("Settlement Agmt."), art. 1, § 1.2.) Article 332-1 of France's Intellectual Property Code provides, among other things, that "[t]he president of the Tribunal de [G]rande [I]nstance (High Court) may . . . order . . . the seizure . . . of the copies constituting an unlawful reproduction of a work, whether already manufactured or in the process of manufacturing, of the receipts obtained and of copies unlawfully used." Article L. 332-4 of the Intellectual Property Code provides, in part, "[i]n respect of software and databases, infringement seizures shall be carried out under an order issued, upon application, by the president of" the Tribunal de Grande Instance.

acquired from a third party) before March 2011 or that obviously follows from it." (*Id.* art. 2.) Additionally, the Settlement Agreement contains a choice-of-law and forum selection clause, which states that "[t]his [S]ettlement [A]greement is subject to French law" and that "the parties agree to submit any disputes related to the fulfillment and/or interpretation of this [S]ettlement [A]greement to the competent jurisdiction of the Paris Appeals Court." (*Id.* art. 8.)

On October 1, 2013, Enyx filed the European Patent Applications, which named Kodde as the sole inventor. (Compl. ¶ 25.) Enyx subsequently filed the United States Patent Applications, which claimed priority to the European Patent Applications. (*Id.* ¶ 26.) A patent was issued on one of the U.S. Patent Applications on January 1, 2017. (*Id.*) The other U.S. Patent Applications and the European Patent Applications remain pending. (*Id.* ¶¶ 25–26.)

Plaintiff alleges that the "subject matter disclosed or claimed in" all of the patent applications was "developed by NovaSparks employees, including Mr. Kodde, prior to March 2011." (*Id.* ¶ 27.) Plaintiff explains that "each invention claimed in the U.S. Patent Applications was conceived . . . by Mr. Battyani, who instructed Mr. Kodde to create software code embodying his ideas." (*Id.* ¶ 33.) As of February 28, 2011, the "Apache Subversion (SVN) version control system" that stores Plaintiff's source code contained "source code embodying each of the inventions disclosed or contained in the U.S. Patent Applications." (*Id.* ¶ 34.)

Plaintiff further alleges that, by filing the European and U.S. Patent Applications, Enyx violated the Settlement Agreement and disclosed Plaintiff's trade secrets. (*Id.* ¶¶ 25–26, 51.) Plaintiff also alleges that Enyx has used and continues to use Plaintiff's trade secrets in products provided to clients in New York and New Jersey. (*Id.* ¶ 30.)

Defendants move to dismiss Plaintiff's patent ownership and trade secrets claims based on the forum selection clause in the Settlement Agreement.[7] (Mem. at 2.) Plaintiff argues that the forum selection clause in the Settlement Agreement is permissive and that the claims involved in this action are not subject to it. (*See* Mem. in Response to Defs. Mot. to Dismiss and/or Stay ("Resp."), at 7–12.) Both of Plaintiff's arguments fail.

## II. LEGAL STANDARDS FOR ENFORCEMENT OF FORUM SELECTION CLAUSES[8]

When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Donnay USA Ltd. v. Donnay Int'l S.A.*, 705 F. App'x 21, 23 (2d Cir. 2017) (quoting *Atl. Marine Constr. Co.*, 571 U.S. at 60). In determining whether to dismiss a claim based on a forum selection clause, the Second Circuit employs the "four-factor inquiry" set forth in *Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007), under which a forum selection clause is "presumptively enforceable" if three factors are met: (1) "[the clause] was 'reasonably communicated to the party resisting enforcement; (2) it is 'mandatory'; and (3) 'the claims and parties involved in the suit are subject to the forum selection clause.'"[9] *Midamines SPRL Ltd. v. KBC Bank NV*, 601 F. App'x 43, 45 (2d Cir. 2015) (quoting

---

[7] Because this Court finds that the forum selection clause in the Settlement Agreement provides a basis to dismiss the relevant claims, it need not consider Defendants' argument that the forum selection clauses in Kodde's agreements with Enyx also provide a basis for dismissal. (Mem. at 17; *see also* Reply at 2–4.) Additionally, because this Court is dismissing Plaintiff's trade secret claims based on the forum selection clause, it need not address Defendants' arguments that Plaintiff's trade secret claims fail to identify its trade secrets with particularity and that Plaintiff's trade secret claims are otherwise "deficient on their face." (Mem. at 11–13, 23–24.)

[8] As noted above, Plaintiffs do not indicate what Federal Rule of Civil Procedure that their motion is pursuant to, and "neither the Supreme Court, nor [the Second Circuit], has 'specifically designated a single clause of Rule 12(b)'—or an alternative vehicle—'as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause.'" *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (citation omitted).

[9] Enyx notes that the Settlement Agreement provides that it is governed by French law, and the forum selection clause would be mandatory under French law. (Reply at 3 n.1.) However, the Second Circuit has held that "where a contract contains both a valid choice-of-law clause and a forum selection clause, . . .

*Phillips*, 494 F.3d at 383–84). "This presumption of enforceability can only be rebutted by the fourth factor: (4) a showing that enforcement would be 'unreasonable or unjust,' or that the clause was "invalid for such reasons as fraud or overreaching.'" *Midamines*, 601 F. App'x at 45 (citation omitted).

## III. PLAINTIFF'S PATENT OWNERSHIP AND TRADE SECRET MISAPPROPRIATION CLAIMS ARE DISMISSED

### A. The Forum Selection Clause is Mandatory

"Whether a forum selection clause is mandatory depends on its language." *Salis v. Am. Exp. Lines*, 331 F. App'x 811, 813 (2d Cir. 2009) (citation omitted). As the Second Circuit noted in *John Boutari & Son, Wine & Spirits v. Attiki Importers and Distributors, Inc.*, "[t]he general rule in cases containing forum selection clauses is that '[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'" 22 F.3d 51, 53 (2d Cir. 1994). In *Boutari*, the court found a provision stating "[a]ny dispute arising between the parties . . . shall come within the jurisdiction of the . . . Greek courts, specifically of the Thessaloniki Courts" was permissive, rather than mandatory, because it "*conferr*[*ed*] jurisdiction" on the Greek courts without "*excluding* jurisdiction elsewhere." 22 F.3d at 53. By contrast, in *Phillips*, the court found a clause stating that "legal proceedings that may arise out of [the parties' agreement] are to be brought in England," was mandatory because "[t]he parties' use of the phrase 'are to be brought' establishe[d] England as an obligatory venue." 494 F.3d at 386.

Here, the Settlement Agreement provides, "the Parties agree to submit any disputes related to the fulfillment and/or interpretation of this settlement agreement to the competent jurisdiction

---

federal law governs the enforceability of the forum selection clause." *Martinez v. Bloomberg LP*, 740 F.3d 211, 214 (2d Cir. 2014).

of the Paris Appeals Court." (Settlement Agmt. art. 8.) NovaSparks argues that this clause is similar to the one at issue in *Boutari*. (Resp. at 8.) However, in *Boutari*, the parties recognized that their disputes would "come within" the Greek courts' jurisdiction or, in other words, that "the [Greek courts] *have* jurisdiction" over their claims. 22 F.3d at 53 (emphasis added). Here, by contrast, the parties "agree[d] to *submit* any disputes related to the fulfillment and/or interpretation of this [S]ettlement [A]greement to the Paris Appeals Court."[10] (Settlement Agmt. art. 8 (emphasis added).) This language "does not simply confer jurisdiction on a court, but rather 'mak[es] explicit that . . . disputes are to be resolved in [the forum indicated] and nowhere else.'" *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs., Inc.*, 952 F. Supp. 2d 542, 559–60 (S.D.N.Y. 2013) (citation omitted) (alteration in original); *see also Mendes Junior Int'l Co. v. Banco Do Brasil, S.A.*, 15 F. Supp. 2d 332, 335 (S.D.N.Y. 1998) (finding clause stating that the parties "herewith agree to submit any disputes arising out of this present Agreement . . . to the courts of Brasilia" was mandatory).

Plaintiff argues that, regardless of whether the forum selection clause is mandatory, it does not apply to Plaintiff's claims, because they are outside of its scope. (*See* Resp. at 7–12.) As noted above, the Settlement Agreement's forum selection clause covers "any disputes related to the fulfillment and/or interpretation of this [S]ettlement [A]greement." (Settlement Agmt. art. 8.) "Judges in this district have interpreted the phrase 'relating to' as tantamount to having a connection, relation, or association with something." *Kortright Capital Partners LP v. Investcorp*

[10] The parties' agreement to "submit *any disputes* . . . to the Paris Appeals Court," (Settlement Agmt. art. 8 (emphasis added)), distinguishes this case from others in this district, in which courts have found clauses stating that "*the parties* will submit to the jurisdiction of" a particular court are permissive, rather than mandatory. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 55 (S.D.N.Y. 2001) (emphasis added) (internal quotation marks omitted); *see also S.K. & Co. v. Legacy Grp. of Am., Inc.*, No. 95 Civ. 6748 (HB), 1996 WL 5072, at *1 (finding clause providing "that *plaintiffs* will submit to the jurisdiction of" particular courts permissive) (emphasis added).

*Inv. Advisers Ltd.*, No. 16 Civ. 7619, 2018 WL 3830065, at *8 (S.D.N.Y. Aug. 13, 2018) (citing *Allied Irish Banks, plc v. Bank of Am., N.A.*, 875 F. Supp. 2d 352, 356–57 (S.D.N.Y. 2012)); *see also Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001) ("The term 'related to' is typically defined . . . broadly and is not necessarily tied to the concept of a causal connection."); *Sherrod v. Time Warner Cable, Inc.*, No. 14 Civ. 1471 (JLC), 2014 WL 6603879, at *5 (S.D.N.Y. Nov. 21, 2014). Here, all of the claims that Defendants seek to dismiss are within the scope of the forum selection clause.

Plaintiff asserts that "ownership of the U.S. patent is not covered under the Settlement Agreement." (Resp. at 10.) However, the facts as alleged in Plaintiff's complaint make clear that ownership of the U.S. Patent is "related to" the fulfillment of Enyx's obligations under the Settlement Agreement. Plaintiff alleges that the terms of Battyani's and Kodde's employment agreements with Plaintiff obligated them to assign ownership of all inventions made during their employment to Plaintiff. Plaintiff further alleges that it is the rightful owner of the inventions described in the U.S. Patent Applications because those inventions were developed by Battyani and Kodde while they were employed at NovaSparks. Thus, Plaintiff's patent ownership claim alleges, in essence, that Enyx violated its obligations under the Settlement Agreement by filing the U.S. Patent Applications claiming ownership of "a technology that was owned by NovaSparks (that it developed itself or was acquired from a third party) before March 2011 or that obviously follows from it." (Settlement Agmt. art. 2.)

Although Plaintiff claims that its trade secret claims "encompass[] actions independent of the obligations in the Settlement Agreement," the forum selection clause is not limited to claims for breaches of the Settlement Agreement. (Resp. at 11.) Rather, it covers all claims "related to the fulfillment and/or interpretation of" that agreement. (Settlement Agmt. art. 8.) The Settlement

Agreement provided that "[i]n the future, Enyx undertakes not to file patent applications for a technology that was owned by NovaSparks . . . before 2011 or that obviously follow from it." (*Id.* art. 2.) Plaintiff's complaint expressly alleges that "[i]n violation of the [S]ettlement [A]greement, Enyx filed three European Patent Applications" and "[i]n violation of the [S]ettlement [A]greement, Enyx filed three U.S. Patent Applications." (Compl. ¶¶ 25–26.) Each of Plaintiff's trade secret claims further alleges that "[b]y filing the European Patent Applications and the U.S. Patent Applications, Enyx compromised the value of NovaSparks' trade secrets." (*Id.* ¶¶ 51, 63.) Thus, Plaintiff's trade secret claims are plainly "related to" Enyx's fulfillment of its obligations under the Settlement Agreement. (Settlement Agmt. art. 8.)

Plaintiff contends that, in addition to the filing of the patent applications, its trade secret claims also concern Enyx's sale of products to customers in the United States, and that these alleged "improper actions took place after the Settlement Agreement and thus could not be the subject of a release contained in the Settlement Agreement." (Resp. at 11.) But the release clause in the Settlement Agreement is not limited to then-existing claims. The release provides that "NovaSparks waives the right to *any legal action* against Enyx . . . that may be based on the facts or material found or the documents seized during the infringement seizure." (Settlement Agmt. art. 1, § 1.2 (emphasis added).) Plaintiff's complaint alleges that "[d]uring th[e] seizure" that NovaSparks carried out on Enyx's premises, "it was discovered that Enyx had used various materials wrongfully expropriated from NovaSparks in the development of Enyx's feed handling product." (Compl. ¶ 23.) Because Enyx's trade secret claims concern the sale of that product, they are "based on facts or material found or the documents seized during the infringement seizure, and are therefore covered by the release. (Settlement Agmt. art. 1 § 1.2.) Moreover, because

claims covered by the release are plainly "related to" Plaintiff's obligations under the Settlement Agreement, they are also within the scope of the forum selection clause.

## IV. LEGAL STANDARDS FOR A STAY

In addition to moving to dismiss Plaintiff's patent ownership and trade secret claims, Defendants also move to stay Plaintiff's patent inventorship claim pending the outcome of the France Action. (Reply at 10.) Courts have the "inherent power to dismiss or stay an action in deference to a parallel foreign action." *Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 89 (S.D.N.Y. 1995) (citing *Caspian Inv., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y.1991)). In general, "[s]uits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012). However, "the mere existence of parallel foreign proceedings does not negate the district courts' 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 190 (2d Cir. 2018) (citation omitted) (omission in original).

"The task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 93 (2d Cir. 2006). This determination "does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* at 94 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). Factors that courts may consider include "the order in which the actions were

filed, the adequacy of the alternate forum, the potential prejudice to either party, the convenience of the parties, the connection between the litigation and the United States, and the connection between the litigation and the foreign jurisdiction."[11] *Royal & Sun*, 466 F.3d at 94. Although an evaluation of the relevant factors must be based on "specific facts" of each case, "[g]enerally, concurrent jurisdiction in United States courts and the courts of a foreign sovereign does not result in conflict," and "[p]arallel proceedings . . . should ordinarily be allowed to proceed simultaneously." *Id.* (citations omitted).

## V. A STAY IS NOT WARRANTED

The France Action and this action are parallel, because the parties and issues in both actions are substantially similar. Plaintiff and Enyx SA are parties to both actions. (Mem. at 19.) Although Enyx FPGA is not a party in the France Action, it is a wholly owned subsidiary of Enyx SA that supports sales of Enyx SA's products in the United States. (Mem. at 19; *see also* Resp. at 1; *Tarazi*, 958 F. Supp. 2d at 434 ("[P]arties are 'similar' for the purposes of international comity when one party is a subsidiary of the other or one party has a substantial ownership interest in the other."). And, as Plaintiff concedes, "there is no question that there are . . . common issues of fact" in both actions. (Resp. at 11.) Both actions concern Enyx's filing of patent applications based on information that Enyx allegedly misappropriated from Plaintiff. (*See id.* at 1.) The same technology that formed the basis for the European Patent Applications also formed the basis for the United States Patent Applications. (*See* Compl. ¶¶ 26–27.)

But the "similarity of the parties and issues presented and the burden of litigating in two fora simultaneously . . . are commonly present when a parallel foreign proceeding is ongoing."

---

[11] As Plaintiff notes, the case articulating these factors, *Royal & Sun Alliance Insurance Co. v. Century International Arms*, involved abstention, rather than a motion to stay. (Resp. at 6.) But courts have applied the *Royal & Sun* factors in deciding motions to stay. *See, e.g.*, *Tarazi v. Truehope Inc.*, 958 F. Supp. 2d 428, 433 (S.D.N.Y. 2013).

*Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 391 (S.D.N.Y. 2010) (citation omitted). "[C]ircumstances that routinely exist in connection with parallel litigation cannot reasonably be considered exceptional circumstances," and Enyx has not identified any other factors that implicate the "exceptional circumstances" necessary to justify the grant of a stay. *Royal & Sun*, 466 F.3d at 95.

Enyx notes that the France Action was filed four days before this action. (Mem. at 20.) While the order of filing is relevant, consideration of this factor "does not turn exclusively on the sequence in which the cases were filed, 'but rather [involves a comparison] of how much progress has been made in the two actions.'" *Kitaru Innovations Inc. v. Chandaria*, 698 F. Supp. 2d 386, 391 (S.D.N.Y. 2010) (citation omitted). Although the France Action was filed four days before this action, Enyx acknowledges that the France Action "has not progressed significantly." (Mem. at 20; *see also* Resp. at 13 n.3 (noting that the France Action "has not advanced relative to [this] action"). Thus, this factor is neutral. *See Kitaru*, 698 F. Supp. 2d at 391 (finding third factor neutral when "there is no evidence that the [foreign] Action . . . has progressed significantly").

The adequacy of the alternate forum militates against a stay. As Enyx concedes, "the French court cannot order a change of inventorship of a U.S. patent," which is the remedy that Plaintiff seeks. (Reply at 9.)

The potential for prejudice also militates against a stay. Plaintiff alleges that it and Enyx have been in "competing discussions with North American customers," (Compl. ¶ 21), and argues that "[c]ustomers of NovaSparks may question the freedom to operate NovaSparks products in the face of the[] patents" in Enyx's name.[12] (Resp. at 13.) While Enyx argues that the prejudice

[12] Plaintiff also suggests that it will be prejudiced by a stay because "it would not be surprising for the Paris Court proceeding to take several years through appeals." (Resp. at 14.) But Plaintiff "has chosen to file these actions in two separate courts, and to file the first in [French] court. It is disingenuous for it to argue

identified by Plaintiff is "speculative," this factor considers the "*potential* prejudice," rather than actual prejudice. *Royal & Sun*, 466 F.3d at 94 (emphasis added). A potential for prejudice exists where, as here, the parties are "direct competitors" and "there is a reasonable chance that delay . . . will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill." *CDX Diagnostics, Inc. v. U.S. Endoscopy Grp., Inc.*, No. 13 Civ. 5669 (NSR), 2014 WL 2854656, at *4 (S.D.N.Y. June 20, 2014). Moreover, Enyx has not identified any prejudice that it would suffer in the absence of a stay.

The convenience of the parties does not weigh in favor of a stay. Enyx argues that a stay will "avoid duplicative discovery and briefing in multiple forums." (Mem. at 22.) Enyx also notes that many of the documents and witnesses at issue are located in France. (*Id.* at 23.) However, Plaintiff asserts that, regardless of what discovery is conducted in the France Action, additional discovery will need to be conducted in this action, because "France does not allow for depositions and U.S. style discovery." (Resp. at 12.) "Although it can be expensive and time consuming for parties to have to litigate similar conduct in different forums, th[is] Court does not find this factor gives rise to exceptional circumstances." *Schenker A.G. v. Societe Air France*, No. 14 Civ. 4711 (BMC), 2016 WL 1465353, at *3 (E.D.N.Y. Apr. 14, 2016); *see also Tarazi*, 958 F. Supp. 2d at 438 (finding the "inconvenience and expense associated with parallel proceedings does not . . . justify[] deference to a parallel foreign litigation").

Enyx also argues that the grant of a stay will "narrow the issues to be addressed by this [C]ourt" and "avoid the possibility of inconsistent determinations." (Mem. at 22.) In particular, Enyx argues that at least one of Plaintiff's claims—the patent ownership claim—could be resolved

---

now that that court will proceed too slowly on the claims it filed there." *Ole Media Mgmt., L.P. v. EMI Apr. Music, Inc.*, No. 12 CIV. 7249 PAE, 2013 WL 2531277, at *5 (S.D.N.Y. June 10, 2013).

by French courts, (Mem. at 22 n.11; Reply at 8), and that the "French court's determination" on "the issue of who invented the technology disclosed in the [patent] applications . . . will at least be 'instructive on the ultimate resolution' of this action." (Reply at 9 (quoting *Tarazi*, 958 F. Supp. 2d at 438).) But "[i]f the [French] [A]ction becomes final, [Enyx] will be free to present its res judicata arguments" on the relevant issues to this Court. *Klonis v. Nat'l Bank of Greece*, S.A., 487 F. Supp. 2d 351, 356 (S.D.N.Y. 2006).

Finally, although this action has considerable connections to France, the patent application on which Plaintiff's inventorship claim is based was filed in the United States. (Resp. at 7; *see also* Compl. ¶ 26.) Because this action has connections to the United States that are more than merely "tenuous," *Thornton Tomasetti, Inc. v. Anguillan Dev. Corp.*, No. 14 Civ. 7040 (JPO), 2015 WL 7078656, at *5 (S.D.N.Y. Nov. 13, 2015), the fact that this action also has foreign connections is not an "exceptional circumstance" that justifies the grant of a stay. *See Leopard Marine & Trading, Ltd. v. Easy St., Ltd.*, No. 15 Civ. 3064 (JSR), 2015 WL 4940109, at *3 (S.D.N.Y. Aug. 6, 2015), *aff'd*, 896 F.3d 174 (2d Cir. 2018) (rejecting argument that "the United States has no connection to this litigation" and finding foreign connections did not weigh in favor of stay); *see also Global Tech Indus. Grp., Inc. v. Go Fun Grp. Holdings, Ltd.*, No. 17 Civ. 3727 (AJP), 2017 WL 5036665, at *4 (S.D.N.Y. Nov. 2, 2017) ("[C]ommercial litigation involving foreign parties and concerning foreign corporations and/or their assets is not unusual in this District, or in federal courts generally."). Because, for the reasons explained above, the other factors that Enyx identifies also fail to implicate any "exceptional circumstances," a stay is not warranted, and Plaintiff's patent inventorship claim in this action will be allowed to proceed. *Royal & Sun*, 466 F.3d at 93.

## VI. CONCLUSION

Defendants' motion, (ECF No. 29), is GRANTED as to the dismissal of Plaintiff's patent ownership and trade secret misappropriation claims, but DENIED as to the stay of Plaintiff's patent inventorship claim. The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
September 20, 2018

SO ORDERED.

George B. Daniels

GEORGE B. DANIELS
United States District Judge